THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Plaintiff, v. CARRIE SOLOMON and Others, Defendants, Impleaded with WINTER LEASING CORPORATION, Appellant.

JOHN J. CAVANAGH, Receiver, Respondent.

First Department, February 23, 1934.

*Jerome T. Nolan* of counsel [*Hannon & Evans*, attorneys], for the appellant.

*Max M. Hirson* of counsel [*Max L. Rothenberg* with him on the brief; *Hirson & Bertini*, attorneys], for the receiver, respondent.

*James D. Ewing* of counsel [*William H. P. Oliver* with him on the brief; *Alexander & Green*, attorneys], for the plaintiff.

UNTERMYER, J. The defendant Winter Leasing Corporation appeals from so much of an order as denies its motion to modify a previous order appointing a receiver of the rents in an action instituted by the plaintiff to foreclose a mortgage on premises known as Nos. 240–248 West Fortieth street, borough of Manhattan  The order appointing the receiver, among other things, authorized him to collect rent from the subtenants of the premises, restrained the defendant Winter Leasing Corporation from collecting rent from these subtenants, restrained the subtenants from paying rent except to the receiver, and authorized the receiver to lease any portion of the premises.

On October 1, 1925, the defendants Solomon and Goldstein, as landlords, leased the entire premises above described for a period of twenty-one years, ending September 30, 1946. The defendant Winter Leasing Corporation by various mesne assignments has succeeded to the interest of the tenant named in that lease. The lease provided for an annual net rental of $95,000 and contained the usual provisions commonly found in long term leases in the city of New York. Apparently the Winter Leasing Corporation encountered difficulty in paying this fixed rental because on January 10, 1933, an agreement was made between Solomon and Goldstein, as landlords, and Winter Leasing Corporation as tenant, whereby the lease was modified so that in lieu of the fixed rental of $95,000 it was provided that out of the rents received by the Winter Leasing Corporation from the premises the first $23,000 should be retained by the Winter Leasing Corporation to meet the expenses of operation, that the next $82,000 should be paid to Solomon and Goldstein, as landlords, and that all sums in excess of $105,000 (being the total of $23,000 and $82,000) should be equally divided between the landlords and the tenant. As collateral security for the payment of the specified amounts the Winter Leasing Corporation assigned all its interest in the subleases to the landlords together with all rents then or thereafter to become due thereunder. The landlord also released the tenant from all liability resulting from

the non-performance of the terms of the lease prior to January 1, 1933. It was further provided that except as modified the lease of October 1, 1925, was in all respects ratified and confirmed. It is important to add that there is no claim of any collusion or fraudulent intent in the transaction above summarized. There is no suggestion that the lease of October 1, 1925, was modified in contemplation of foreclosure or for the purpose of benefiting the tenant in such an event at the expense of the mortgagee.

The question then is whether the court was justified in completely disregarding the relations between Solomon and Goldstein and the Winter Leasing Corporation by authorizing the receiver to collect the rents from the subtenants to the exclusion of the Winter Leasing Corporation. If the relation between Solomon and Goldstein and the Winter Leasing Corporation was that of landlord and tenant, then this could not be done. (*Prudence Co.* v. *160 West 73d Street Corp.*, 260 N. Y. 205; *Holmes* v. *Gravenhorst*, 263 id. 148.) The lease, if it be a lease, would constitute an interest in the property not subject to destruction except by sale of the premises under a judgment of foreclosure to which the tenant was a party. (*Metropolitan Life Insurance Co.* v. *Childs Co.*, 230 N. Y. 285.) If, however, the relation was that of principal and agent, then it is equally clear that the agency of the Winter Leasing Corporation to collect rent for the owners would not survive the receivership. (See *Andrew* v. *Newcomb*, 32 N. Y. 417; *Kerrains* v. *People*, 60 id. 221.) *Bank of Manhattan Trust Co.* v. *571 Park Ave. Corp.* (263 N. Y. 57) is entirely consistent with these views. In return for certain benefits the owner had agreed to allow a creditor to occupy an apartment in the premises free of rent. The apartment was thereafter sublet by the creditor at a rental of $4,000 per annum, and this monthly rent, paid to the owner, was regularly transmitted by the owner to its creditor. It was held that the agreement between the owner and its creditor was a lease and that the benefits accruing to the owner constituted rent, which the receiver was entitled to collect. " The rent, instead of being paid in cash, was paid by being offset against the interest otherwise payable on the debt and against the other benefits received by the mortgagor under the agreement " (p. 62). The effect of the decision was merely to require the tenant to pay to the receiver rent, the equivalent of which the owner would otherwise have continued to receive in corresponding benefits.

We are of opinion that the relation of Solomon and Goldstein to the Winter Leasing Corporation was that of landlord and tenant, even though the rental payable under the agreement of January 10, 1933, was not a fixed rental, but was dependent upon the income

received by the tenant from the premises. This is not inconsistent with such a relation (*Hunt* v. *Comstock*, 15 Wend. 665; *Stewart* v. *Doughty*, 9 Johns. 108), and we perceive no inconsistency here. By the agreement of January 10, 1933, the Winter Leasing Corporation did not cease to be a tenant and become the agent of the owners to make leases and collect rents. The characteristics of the relation of landlord and tenant continued after the agreement precisely as before. The Winter Leasing Corporation retained exclusive possession of the premises and for that possession was obligated to pay rent, which did not cease to be rent because it was measured by the earnings of the property. Leases of any portion of the premises thereafter executed were not to be in the name of the owners but in its own name. Tenants occupying the premises were not the tenants of the owners; they were the tenants of the Winter Leasing Corporation. Liability for the expenses of operation was the liability of the Winter Leasing Corporation and not the liability of the owners. (See *Lake* v. *Sweet*, 18 N. Y. Supp. 342; 63 Hun, 636.) We think it is evident that the Winter Leasing Corporation had an interest or estate in the land and not merely an agency to manage the property for the owners and collect the rents for them. The fact that the subleases were assigned to the landlords is not controlling, for the assignment was only as collateral security for the performance of the terms of the modified lease.

From this it follows that the receiver may not collect rents accruing under leases made by the Winter Leasing Corporation to subtenants, but that he is entitled to any income which would have accrued to Solomon and Goldstein under the modified lease of January 10, 1933, with the Winter Leasing Corporation.

The order appealed from should be reversed, with twenty dollars costs and disbursements, and the motion granted.

FINCH, P. J., MERRELL and O'MALLEY, JJ., concur; MARTIN, J., dissents and votes for affirmance.

MARTIN, J. (dissenting). The lease in this case is subordinate to the mortgage which provides for a receiver in case of foreclosure. That receiver has a right to collect the stipulated rents fixed by the lease until the judgment of foreclosure and sale. The fact that a lease has been made will not prevent the appointment of a receiver or interfere with the rights of the receiver to collect the stipulated rents.

In *Markantonis* v. *Madlan Realty Corp.* (262 N. Y. 354) the court said: "A receiver appointed in a foreclosure action is entitled to receive all the rents and profits, which are an incident to ownership of the property, in advance of and pending a judgment by the

court in the foreclosure action and a sale which transfers ownership to the purchaser."

In *Prudence Co.* v. *160 West 73rd Street Corp.* (260 N. Y. 205, 211) the court said: " Right to the rents and profits is merely an incident of ownership of the property which has been pledged as security for the mortgage debt. The receiver holds the rents and profits in trust to apply upon a judgment for a deficiency. Any surplus must be returned to the owner." (*Bank of Manhattan Trust Co.* v. *571 Park Ave. Corp.*, 263 N. Y. 57; *Holmes* v. *Gravenhorst*, Id. 148; *Sullivan* v. *Rosson*, 223 id. 217.)

The receiver in this case had a right to collect all the rents and proceeds from the property by virtue of the mortgage providing for the appointment of a receiver. (*Sullivan* v. *Rosson*, *supra*.)

The arrangement here entered into is a mere subterfuge to escape the effect of a receivership. This agreement and the original lease are both subject to the mortgage and cannot affect or destroy its terms, or prevent the receiver from collecting the rents due from the tenants or subtenants.

The order should be affirmed.

Order reversed, with twenty dollars costs and disbursements, and motion granted.